UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENEVA LEMA, | CASE NO. 1:10-cv-00362-SMS |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| COMFORT INN, MERCED, et al., | |
| Defendants. | (Docs. 75, 77, and 78) |

Both parties have moved for summary judgment in this case and its companion case, *Lema v. Courtyard Marriott Merced* (1:10cv-01131-SMS). The Court's having previously ordered the measurements determined by Plaintiff's expert to be established and accurate, Defendants do not challenge the existence of the barriers that Plaintiff has alleged and do not contend that any proposed remediation is not readily achievable. They oppose summary judgment solely on the basis that Plaintiff lacks standing, supporting their contentions with a misinterpretation of Plaintiff's deposition. As a result, the Court finds that no material factual dispute exists and that Plaintiff is entitled to summary judgment, an injunction requiring correction of inaccessible conditions at the Comfort Inn, statutory damages, and attorney's fees and costs.

**I.    Procedural History**

On February 27, 2010, Plaintiff filed a complaint against Defendants seeking injunctive relief and damages for violations of the Americans With Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq*.) (ADA); California state disabilities rights laws (California Civil Code §§ 54, 54.1,

1  and 55); and the Unruh Civil Rights Act.  Plaintiff sought injunctive and declaratory relief, and
2  treble damages.  Defendants answered on April 8, 2010.
3         On June 22, 2010, Plaintiff had filed a complaint in a companion case: *Lema v.*
4  *Courtyard Marriott Merced*, 1:10cv-01131-SMS.  Because the defendants in the two cases are
5  substantially the same persons and entities, discovery and most other proceedings were
6  consolidated to promote economy.
7         Following multiple substitutions of counsel in the spring and summer of 2011,
8  Defendants failed to provide timely expert discovery, resulting in the Court's striking
9  Defendants' designation of its expert witness on January 19, 2012.  The Court declared the hotel
10 measurements, as determined by Plaintiff's expert Karl Danz, established and accurate for
11 purposes of the continuing litigation.  Doc. 49.
12        On February 3, 2012, Defendants moved to dismiss the case for lack of jurisdiction,
13 arguing that Plaintiff lacked standing for failure to allege the specific ADA deficiencies that
14 deterred her from staying at the Comfort Inn in the two years preceding her filing the complaint,
15 her intent to return to the Comfort Inn, and the relationship of her disability to the alleged
16 barriers.  On March 27, 2012, the Court dismissed the complaint with leave to amend, observing
17 that although Plaintiff had testified to the disputed matters in her deposition, the complaint did
18 not allege facts supporting a conclusion that she had visited the Comfort Inn or intended to
19 return.  The Court rejected Defendants' contention that the action was barred by the statute of
20 limitations, citing *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir.), *cert.*
21 *denied*, 537 U.S. 1030 (2002).  (In *Pickern*, the Ninth Circuit held that the statute of limitations
22 did not bar an ADA action by a plaintiff who had not visited the subject premises within the
23 limitations period if she had actual knowledge of continuing violations that precluded her
24 access.)
25        After Plaintiff filed her first amended complaint on April 25, 2012, Defendants moved to
26 strike portions of it.  The Court denied the motion, noting that Defendants' failure to support
27 their motion revealed their continuing strategy of delay.  The Court warned Defendants that
28 ///

1   additional motions presented for improper purposes, such as harassment, delay, and inflation of
2   litigation costs, would subject them sanctions under F.R.Civ.P. 11.
3         On the same day, Defendants also moved for a more definite statement, contending that
4   they were unable to connect Plaintiff's alleged disability to the barriers that she alleged that she
5   encountered at the Comfort Inn.  The Court denied Defendant's motion, noting that first amended
6   complaint was sufficient to apprise Defendants of the claims against them and that the type of
7   detailed information Defendants sought was more appropriately secured in the course of
8   discovery.
9         On July 2, 2012, Defendants moved to dismiss the complaint for lack of jurisdiction.  The
10  Court struck the motion and directed Defendants to answer the complaint within ten days.
11  Defendants answered on July 13, 2012.
12        On August 2, 2012, Defendants filed another motion to dismiss for lack of jurisdiction.
13  Because Defendants filed this motion to dismiss after filing their answer, the Court ordered that
14  the motion would be deemed a summary judgment motion to be adjudicated according to
15  procedures applicable to motions brought under Rule 56.  Plaintiff filed a consolidated motion
16  for summary judgment on August 3, 2012.  To promote clarity of understanding and ease of
17  execution, the Court will issue a separate order for each case.

18  **II.   Applicable Facts**

19        Plaintiff, Reverend Geneva Lema, who is 74 years old, is the founder and pastor of City
20  Restoration Church in Fairfield, California.  For over thirty years, she has also maintained a
21  traveling ministry, speaking throughout California and the United States.  Her speaking
22  engagements typically include ten to twelve churches in the greater Merced area, including two
23  annual appearances at Liberty Church in Atwater.  When Plaintiff prepared her declaration in
24  August 2012, she anticipated staying at the Courtyard in October 2012, when she would again be
25  speaking at Liberty Church.
26  ///
27  ///
28  ///

Plaintiff has a condition called *osteogenesis imperfecta*.[1] She is four feet tall when standing and 39 inches tall when seated in her wheelchair, limiting the height to which she can reach.

Until 2006, Plaintiff was relatively mobile on crutches. Triple spiral fractures in both legs in 2006 and subsequent injuries increased her pain, introduced a need for prescription pain killers, diminished her endurance, and increased her instability. Since 2006, Plaintiff limits her use of crutches to walking around in her own home and preaching. In her declaration (Doc. 78-3) and deposition, Plaintiff explained that because of her familiarity with her home, including furniture placement and available handholds, using crutches there was convenient and safe. She opined that standing during her presentations was necessary to project "a pastoral message of strength." Otherwise, due to her fragility and instability, she always uses her motorized wheelchair when she is inside an unfamiliar building or outside. The physical stress of traveling, especially extended auto travel, causes debilitating physical stress that quickly exhausts her.

When Plaintiff travels to Merced for a speaking engagement, she would prefer to stay at a lower priced hotel, such as the Comfort Inn, since the cost of lodging Plaintiff and her ministry team is either paid from Plaintiff's honorarium or by the sponsoring church, which often cannot afford expensive lodging. Plaintiff had stayed at the Comfort Inn for many years, dating back to its tenure as a Holiday Inn. In her deposition, she recounted the embarrassment she experienced in 2006 when she was unable to enter the restroom in her "accessible" room at the Comfort Inn and had to check out in the middle of the night and move to a more accessible room in Turlock. When Plaintiff rented a suite at the Comfort Inn in 2007, using the inaccessible bathroom required her to disrobe outside the room and use the toilet without closing the door, within hearing of those with whom she was meeting in the adjacent room.

///

---

[1] *Osteogenesis imperfecta* (OI) is a congenital condition frequently caused by a genetic defect that impairs the body's production of type 1 collagen, a necessary component of bone. www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002540 (March 27, 2013). Persons with OI have extremely fragile bones and typically do not grow to average height. *Id.* Classic symptoms include multiple bone fractures. *Id.*

4

When the Courtyard opened in 2008, Plaintiff elected to stay there since its barriers were more manageable than those she encountered at the Comfort Inn. Because the Courtyard is more expensive than the Comfort Inn, when Plaintiff preaches in the Merced area, she no longer brings her ministry team.

At the Comfort Inn, inaccessibility began upon arrival. Reaching the disabled parking spaces required driving under areas with limited high-top clearance, a problem for a van equipped for use by a person who is wheelchair dependent. The limited number of disabled parking spaces were improperly and hazardously configured, and required Plaintiff to travel behind numerous parked vehicles, sometimes while negotiating steep slopes. The main entrance was not accessible by wheelchair, requiring Plaintiff to follow a circuitous route and enter through a rear door. Once inside, cluttered hallways impeded her travel to the front lobby. Similarly, the lobby, crowded with furniture, lacked sufficiently wide paths of travel to permit Plaintiff to use it. The registration desk was too high for hotel staff to notice Plaintiff and for Plaintiff to sign registration and payment documents.

The Comfort Inn's pool and sauna areas were not accessible by wheelchair; the pool lift was inoperable. Tables in the lobby and pool were too low for Plaintiff to use them in her wheelchair. Service and beverage counters in the breakfast area were too high to reach and lacked clear space to manipulate a wheelchair. Public restrooms lacked turning space, strike edge clearance, approach and knee space, appropriate reach ranges, grab bars, and space to transfer from a wheelchair to the toilet. The business center desks were too low for Plaintiff to use in a wheelchair; the business machines were out of reach and obstructed.

Defendants are the individuals and entities that own the hotel. Defendants admit that the Comfort Inn, located at 730 Motel Drive, Merced, California, was constructed in 1993. In his October 10, 2012 declaration, Defendant Edwin Anthony stated, "All of the ADA barriers alleged in Plaintiff's complaints in both these cases have been removed." Doc. 82-1 at 1.

According to Defendant Kasturi Lal, Defendants operated the Comfort Inn as a Holiday Inn under a ten-year license from 1997 to 2007. When the license with Holiday Inn expired, Defendants elected to secure a Comfort Inn franchise, making changes to conform to the

franchise requirements, including upgrading counter tops to granite and "freshening" guest rooms.

In his expert report, Plaintiff's accessibility consultant Karl Danz set forth measurements and observations of those aspects of the facilities that were not accessible to Plaintiff, and opined that neither hotel complied with the ADA or Title 24 code requirements that were in effect on their respective construction dates. As previously noted, the Court has already deemed Danz's measurements and observations established and accurate. Defendants do not contend that removing the barriers identified by Plaintiff and Danz is not readily achievable.

On July 31, 2012, Plaintiff's accessibility expert Barry Atwood reinspected the Courtyard[2] and observed that the conditions that Danz identified were still present except for correction of the security latch on the door and insulation of the drain pipe under the sink in room 104; resolution of the three parking issues; correction of the height and clear space required for the poolside emergency telephone; lowering the controls for the spa; correcting the secondary pool exit door to open to 90 degrees; and lowering of the emergency telephone in the exercise room, although it still remained obscured by equipment. The landing for the laundry room entrance door was obstructed by a laundry basket.

As a result of Defendant Edwin Anthony's declaration that all alleged barriers had been remediated, Atwood re-inspected both hotels on September 30, 2012. Although he had attempted to reserve an accessible guestroom at the Comfort Inn for that visit, he was advised that the sole accessible guestroom was unavailable. Although is inspection of the common areas revealed that two guestrooms at the Comfort Inn had lowered peepholes, the accessible guestroom appeared to be neither occupied nor under construction. Atwood annotated the Danz report to reflect conditions observed on September 30, 2012.

### III. Summary Judgment

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(c)(2); *Adickes v. S.H.*

---

[2] For reasons not disclosed by Plaintiff, Danz was unavailable to perform the reinspection.

*Kress & Co.*, 398 U.S. 144, 157 (1970); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248; *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

When the moving party will have the burden of proof on an issue at trial, it must demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun*, 509 F.3d at 984. When the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or merely by pointing out that no evidence supports an essential element of the non-moving party's claim. *See Soremekun*, 509 F.3d at 984; *Nissan Fire and Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Id.* at 1102-03. If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Id.* at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.) *(quoting* F.R.Civ.P. 56(e)), *cert. denied*, 555 U.S. 827 (2008). Thus, Anthony's statement that all deficiencies have been corrected is not controlling in the absence of any supporting evidence.

///

1   The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Anderson*, 477 U.S. at 255; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003). Nonetheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Sanders v. City of Fresno*, 551 F.Supp.2d 1149, 1163 (E.D.Cal. 2008), *affirmed*, 340 Fed.Appx. 377 (9th Cir. 2009); *UMG Recordings, Inc. v. Sinnott*, 300 F.Supp.2d 993, 997 (E.D.Cal. 2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." *del Carmen Guadelupe v. Negron Agosto*, 299 F.3d 15, 23 (1st Cir. 2002). A court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, even though a court is not required to examine the entire file for evidence establishing a genuine issue of material fact when the opposing party has not set forth the evidence with adequate references. *See Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. *See Nissan Fire & Marine*, 210 F.3d at 1103.

### IV.    Americans With Disabilities Act (ADA)

In enacting the ADA, Congress found that discrimination against the disabled is "most often the product, not of invidious animus, but rather of thoughtlessness and indifference." *Alexander v. Choate*, 469 U.S. 287, 295-96 (1985). Concluding that "we can no longer tolerate the invisibility of the handicapped in America" (118 Cong. Rec. 525-26 (1972)), it enacted the ADA "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). To prevail on a discrimination claim under Title III of the ADA, a plaintiff must prove that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of

///

public accommodation; and (3) the plaintiff was denied full and equal treatment by the defendant because of her disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Unlawful discrimination occurs when features of an accommodation "subject an individual . . . on the basis of disability or disabilities . . . , directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual . . . to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(iv). When a building is already constructed, discrimination includes the failure to remove architecture barriers when such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). In this case, Defendants do not contend that removing the architectural barriers at the Comfort Inn is not readily achievable.

Nor do Defendants contest the existence of the barriers that Danz identified. Indeed, after their failure to retain and identify an expert witness, the Court ordered that the hotel measurements set forth in Danz's expert report were deemed established and accurate. The ADA Accessibility Guidelines (ADAAG) define whether a facility is "readily accessible" by establishing technical structural requirements for places of public accommodation. *Chapman v. Pier I Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). Any element of a facility that does not meet or exceed the ADAAG requirements is a barrier to access. *Id.* The Court's adoption of the measurements, and hence, the barriers, identified in Danz's report forecloses any attempt by Defendants to dispute the existence of architectural barriers to accessibility at the Comfort Inn. As a result, Defendants' sole objection to Plaintiff's ADA claims is that she lacks standing to prosecute her claims.

A. **Standing: Plaintiff's Use of Wheelchair and Crutches**

Defendants' first contention is that because Plaintiff does not use a wheelchair inside, she cannot challenge the indoor barriers to a wheelchair user. A plaintiff has sufficient personal stake in the outcome of an ADA claim only to the extent that the alleged barrier relates to her personal disability. *Chapman*, 631 F.3d at 944, 947. *See also Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1044 n. 7 (9th Cir. 2008) (holding that a wheelchair-dependent plaintiff may challenge only those barriers relating to mobility); *Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000)

1  (holding that a plaintiff who is not blind lacks standing to sue for ADA violations that only affect
2  the blind).  Thus, if Plaintiff does not use a wheelchair inside structures such as the Comfort Inn,
3  she would lack standing to challenge the interior barriers to wheelchair use there.  Defendants'
4  argument is based on a misinterpretation of Plaintiff's deposition testimony.

5       In the course of the deposition, Plaintiff first testified to the barriers she encountered at
6  the Comfort Inn during a May 2006 stay.  On that visit, Plaintiff, who had casts on both legs and
7  used a manual wheelchair at all times, had to leave the Comfort Inn and relocate to a Holiday Inn
8  in Turlock, California, since she was completely unable to use the bathroom in her "accessible
9  room."  Lema Dep. at 44-46.  By the time of her October 2006 stay, Plaintiff's casts had been
10 removed, and she was able stand on her crutches, enabling her to stay at the Comfort Inn.  Lema
11 Dep. at 46.

12      Later in the deposition, Plaintiff's attorney, Mr. Thimesch, questioned Plaintiff as
13 follows:

14     Q.    So you use–can you tell us how often you use a wheelchair for mobility and why?

15     A.    Well, I need to give you a little background.  I was born with a very rare bone disease called osteogenesis imperfecta.  And my legs have been broken numerous times.
16 And I was quite mobile on crutches, the underarm crutches until 2006.  I got injured badly. And now the wheelchair is over 50 percent and sometimes more.  ***I don't go into***
17 ***buildings on crutches.***  I enter– we just now went out to the bathroom.  And I had to jump over a threshold that lifted my wheelchair up and snapped me back down.  I can't be doing
18 that on crutches after having the injury I had.  That changed everything.

19     So I believe your question was how much do I use a wheelchair?

20     Q.    Yes.

21     A.    ***Okay.  All the time when it comes to outside.  I never walk outside.  Not now.  I no longer walk outside.***
22
    Q.    Now you said that you use a wheelchair a certain percentage of the time.  What do
23 you use when you're not using a wheelchair?

24     A.    ***If I'm home I walk on my crutches.  And when I'm preaching I walk on my crutches.***  So its hard to say.  I'm quite active, but I have to be in an area at home where I
25 know the perimeters and I know–I'm familiar with everything so there's not uneven areas. I have ramps in my house.
26
Lema Dep. at 75-76 (*emphasis added*).
27
     Because Plaintiff's deposition testimony clearly indicated that she used a wheelchair at all
28
times except when she was within her own home or preaching, Defendants' first contention must

1  fail.  Plaintiff has standing to challenge those barriers within the Comfort Inn that affect an
2  individual using a wheelchair.

3       **B.**     **Standing: Similarly Wronged**

4       In their fourth contention, Defendants misunderstand the nature of a claim under the ADA,
5  arguing that Plaintiff cannot prevail because now that her legs are no longer broken and in casts,
6  she can no longer experience the same discrimination when staying at the Comfort Inn that she
7  experienced during her 2006 stay.  Although Plaintiff's broken legs rendered her completely
8  unable to stay at the Comfort Inn in May 2006, discrimination under the ADA does not require
9  that a disabled plaintiff be completely unable to use the facility.  The ADA proscribes even subtle
10  forms of discrimination, such as difficult-to-navigate hallways, unmanageably heavy doors, and
11  high service counters that block the view of individuals seated in wheelchairs.  42 U.S.C. §
12  12182(a).  *See, e.g., Antoninetti v. Chipotle Mexican Grill, Inc.,* 643 F.3d 1165, 1174 (9th Cir.
13  2010), *cert. denied*, 131 S.Ct. 2113 (2011) (holding that counter height which prevented patron in
14  wheelchair from observing available ingredients denied patron the ability to enjoy the "Chipotle
15  experience") ; *Chapman*, 631 F.3d at 945 (addressing a wheelchair-bound plaintiff who intended
16  to continue to use convenience store despite barriers that limited his access to certain areas and
17  services there).  To the extent that Plaintiff continues to encounter barriers relating to her
18  wheelchair use, she has standing to bring suit for injunctive relief under the ADA.

19       **C.**     **Standing: No Injury in Fact**

20       Generally citing *Chapman* in their third contention, Defendants maintain that because
21  Plaintiff failed to allege which barriers denied her full and equal access, she lacks standing for
22  failure to allege an injury in fact.

23       To demonstrate an injury in fact, an ADA claimant must establish that she has been
24  injured as a result of the defendant's actions and that the injury can be redressed by a favorable
25  decision.  *Chapman*, 631 F.3d at 946.  Because the sole remedy available to private plaintiffs
26  under the ADA is injunctive relief, proving redress requires an ADA plaintiff to "demonstrate a
27  'real and immediate threat of repeated injury' in the future."  *Id.*  "Once a disabled individual has
28  encountered or become aware of alleged ADA violations that deter his patronage or otherwise

interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III . . . ." *Id.* at 947, *quoting Doran*, 524 F.3d at 1042 n. 5. As long as the barrier interferes with the plaintiff's full and equal enjoyment of the facility in light of the plaintiff's particular disability, the plaintiff has the necessary personal stake in the proceeding to have Article III standing. *Chapman*, 631 F.3d at 947.

The evidence submitted in support of Plaintiff's motion for summary judgment fully supports a finding that Plaintiff experienced an injury in fact. (Defendants submitted no evidence in support of their motion.) Danz's expert report, as updated by Atwood, established the existence of multiple failures to construct the facilities to the ADAAG standards. Plaintiff's declaration and deposition testimony tie those barriers to Plaintiff's particular disabilities: wheelchair use and lack of normal hand strength.

By setting forth her long history of speaking engagements at Liberty Church and other churches in the Merced area as well as her return to Merced for an additional speaking engagement in October 2012, about a month after these motions were calendared, Plaintiff has adequately demonstrated her intent to return to the Merced area. In addition, by testifying to her desire to travel with her ministerial team and the financial limitations presented by the need to secure more expensive lodgings, Plaintiff demonstrated her particular interest in returning to the Comfort Inn.

### D.   **Failure to Allege Disability**

Finally, Defendants contend that Plaintiff cannot prevail on an ADA claim because she failed to allege any of the elements necessary to qualify as disabled. Their contention is factually incorrect since the First Amended Complaint alleged that as a result of *osteogenesis imperfecta* , which caused her leg bones to break easily, Plaintiff used a wheelchair for mobility and had difficulty reaching due to her short stature, which was aggravated when she was seated in her wheelchair. It further alleged that Plaintiff has difficulty performing actions that require "grasping, pinching, or twisting of the wrist." Doc. 60 at 2. And it provided an exhaustive list of

///

the barriers Plaintiff encountered when she stayed at the Comfort Inn as a result of her disabling conditions.

Under the ADA, an individual has a disability if she has (1) a physical or mental impairment substantially limits one or more of her major life activities, (2) a record of such an impairment, or (3) been regarded as having such an impairment.  42 U.S.C. § 12102(1).  "Major life activities . . . include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."  42 U.S.C. § 12102(2)(B). Determining whether an impairment substantially limits a life activity must be made without regard to the ameliorative effects of mitigating measures such as mobility devices.  42 U.S.C. § 12102(4)(E).[3]  "The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter."  42 U.S.C. § 12102(4)(A).

In evaluating a motion for summary judgment in a disability case, comparative or medical evidence is not required.  *Rohr v. Salt River Project Agricultural Improvement and Power District*, 555 F.3d 850, 858-59 (9th Cir. 2008).  "However, '[t]o survive summary judgment an affidavit supporting the existence of a disability must not be merely self-serving and must convey sufficient detail to convey the existence of an impairment.'"  *Id.* at 859, *quoting Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005).

In her declaration and testimony, Plaintiff testified that she has a condition called *osteogenesis imperfecta*, which has resulted in her being much shorter than average and having frequently broken bones.  Defendants' motion concedes her illness.   Plaintiff testified and set forth in her declaration that after a 2006 accident severely fractured both of her legs, she became

---

[3] This statutory provision, enacted as part of the ADA Amendments Act of 2008 (ADAAA), took effect January 1, 2009.  The amended provision overruled *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), on which Defendants' argument relied in part.

13

almost entirely wheelchair dependent as a result of increased pain, fatigue, and instability, as well as the increased danger of another accident. Uncontroverted evidence supports a finding that Plaintiff has limitations of major life activities, including walking, standing, and manipulating objects that require twisting or turning, as well as an impairment of the major bodily function of cell growth. In short, Plaintiff is unquestionably disabled for purposes of the ADA.

### E. Summary of ADA Claim

Plaintiff has presented overwhelming evidence of barriers present at the Comfort Inn that limit access and equal enjoyment of the facilities by individuals who, like Plaintiff, use a wheelchair to get around. Having presented no evidence whatsoever and having asserted multiple legal objections to Plaintiff's standing that are not supported by the facts of this case, Defendants fail to present any genuine issue of material fact. Plaintiff is entitled to judgment as a matter of law. Accordingly, the Court will grant Plaintiff's request for injunctive relief regarding the barriers that rendered the Comfort Inn inaccessible to her.

## V. California Disabled Rights Acts

[C]laims under the Disabled Persons Act and the Unruh Civil Rights Act are established if a violation of the ADA is established. California Civil Code §§ 51(f); 54(c). *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 870 F.Supp.2d 995, 1014 (E.D.Cal. 2012). As a result, summary judgment for Plaintiff on her ADA claim requires that this Court also grant her summary judgment on her California state claims under the Disabled Persons Act and the Unruh Civil Rights Act. *Id.*

Plaintiff requests statutory damages of $4000 for each instance in which she was deterred from staying at the Comfort Inn because of the extent of its inaccessibility. A person who violates the Disabled Persons Act is liable for "actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars" for each separate offense. California Civil Code § 54.3(a). A person who violates the Unruh Civil Rights Act is liable for "the actual damages, and any amount as may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than four thousand

dollars" for each separate offense. California Civil Code § 52(a). A person may not be liable for damages under both the Disabled Persons Act and the Unruh Civil Rights Act. California Civil Code § 54.3(c).

Typically, an award of statutory damages under the Unruh Act requires a plaintiff to prove intentional discrimination. When a defendant is liable for an Unruh Act claim based on ADA violations, however, the plaintiff need not prove intentional discrimination. *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837, 846-47 (9th Cir. 2004); *Hubbard v. Twin Oaks Health and Rehabilitation Center*, 408 F.Supp.2d 923, 932 n. 4 (E.D.Cal. 2004). Accordingly, Plaintiff is entitled to receive the higher statutory damage award provided by the Unruh Act.

A plaintiff may recover the statutory minimum for each instance that she visited a noncompliant facility even though it was not full accessible and for each instance that a defendant's noncompliance with the ADA and the state laws deterred her from visiting the particular establishment. *Arnold v. United Artists Theatre* Circuit, 866 F.Supp. 433, 439 (N.D.Cal. 1994); *Feezor v. Del Taco, Inc.*, 431 F.Supp.2d 1088, 1090-91 (S.D.Cal. 2005). To do so, she must prove each occasion on which she was denied equal access. *Donald v. Café Royale, Inc.*, 218 Cal.App.3d 168, 183 (1990). Proof that access was denied may be indirect. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000).

Plaintiff testified that she was deterred from staying at the Comfort Inn on January 19, 2009, and in October 2009. Lema Deposition at 25. Citibank charge card records provided by Liberty Fellowship documented its payment of Plaintiff's January 19, 2009 stay. Plaintiff's Further Supplemental Disclosure at 22. Accordingly, Plaintiff is entitled to statutory damages of $8000.00.

## VI. Attorneys' Fees and Costs

The ADA authorizes the Court to allow reasonable attorneys' fees to the prevailing party, as well as litigation expenses and costs. 42 U.S.C. § 12205. Because the allowance of fees and costs is appropriate in this case, the Court directs the Plaintiff to submit a motion for determination of the appropriate amount under applicable law. Because much of this case was administered simultaneously with its companion case (*Lema v. Courtyard Marriott Merced*

(1:10cv-01131-SMS)), the Court will consolidate the two cases for calculation of attorneys' fees and costs, and will issue a single consolidated order setting forth the amount payable by Defendants.

**VII.    Conclusion and Order**

This Court hereby ORDERS that

1. Defendants' motion for summary judgment is DENIED;
2. Plaintiff's motion for summary judgment is GRANTED;
3. Plaintiff is entitled to judgment as a matter of law on her claims for violation of the California Disabled Persons Act and the Unruh Civil Rights Act;
4. Pursuant to California Civil Code § 52, Defendant is order to pay to Plaintiff statutory damages totaling $8000.00;
5. Plaintiff is entitled to summary judgment on her claim of violation of the Americans With Disability Act;
6. Plaintiff is directed to prepare a form of injunctive order requiring amelioration of the ADA violations at the Comfort Inn and submit to the Court on or before April 15, 2013;
7. Plaintiff is directed to submit her claim for attorneys' fees, expenses of litigation, and costs on or before April 30, 2013.
8. The Clerk of Court is directed to enter judgment for Plaintiff.

IT IS SO ORDERED.

**Dated:    April 2, 2013**                                /s/ Sandra M. Snyder
                                                UNITED STATES MAGISTRATE JUDGE